TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA-AMENDED BRIEF-PART I
DATE: 10/02/2024 08:35:23 AM

CASE NO. 2:24-cv-03830-MGL-MGB

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FARID FATA,

Plaintiff,

v.                                          CASE No. 2:24-cv-03830-MGL-MGB

UNITED STATES OF AMERICA,

Defendant.
_____/

PLAINTIFF'S AMENDED AND CONSOLIDATED MEMORANDUM OF LAW UNDER THE FTCA:

I - JURISDICTION AND VENUE:

1 - Plaintiff, Farid Fata ("Fata"), prose, respectfully submits this amended brief under the Federal Tort

Claims Act (FTCA) alleging a medical malpractice claim. This Court has jurisdiction under 28 U.S.C. 1346(b),

of the FTCA. The FTCA allows "damages for injury or loss of property or personal injury or death caused by

negligent or wrongful act or omission of any employee ... while acting within the scope of his office or

employment under the circumstances where the United States, if a private person, would be liable to the

claimant in accordance of the place where the act or omission occurred". Brownback v. king,

141 S.Ct. 740 (2021).

2 - Plaintiff has complied with all pre-suit requirements of 28 U.S.C. 1346(b), 2671-2680. On December

19, 2023, Fata submitted a Government Standard Form SF-95 to the Bureau of Prisons to make his

administrative claim (Doc. 1). Fata has attached the Notice of Intent to Sue (NOI) as required

by South Carolina malpractice Law. Fata also submitted his medical records. The BOP's legal assistant

J. Carter that a response will be mailed on or before June 27, 2022 (Doc. 2 ). Fata's Tort Claim

of delays to refer him to outside specialists did not accrue until June 8, 2022, when Fata developed further

injury from recurrent UTI absent seeing a urologist after six-month wait; and until October 18, 2022, when

Fata finally saw the hematologist after 8-month wait absent NEUPOGEN treatment. Fata's claim of denial

of urgent medical treatment for his neutropenic recurrent infections did not accrue until November 22,

2022, when Dr. Hoey refused to submit/request NEUPOGEN approval to/from Region and denied Fata

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------------------------

NEUPOGEN treatment. Fata's medical claims meet the two-year statute of limitations, 28 U.S.C. 2401(b).

On April 29, 2024, Fata updated the agency of his medical conditions (Doc. 3), as the agency never requested additional information. On June 12, 2024, the agency denied Fata's medical claims (Doc. 4), and claimed that Fata was not injured. Fata has satisfied the presentment element of 28 U.S.C.S. 2675(a).

3 - The District of South Carolina is an appropriate venue under 28 U.S.C. 1391 (b)(2) and (e) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

4 - The United States is the proper defendant in this action pursuant to 28 U.S.C. 1346(b)(1), 2671-80.

II - PARTIES:

5 - Plaintiff Fata, is a federal prisoner housed at FCI Williamsburg South Carolina, provides the Memorandum Brief with factual allegations. Fata was at all times relevant to this action.

6 - The United States of America is the appropriate party, with certain exceptions, for injuries caused by the negligent or wrongful act or omission of any federal employee acting within the scope of his or her employment, in accordance with the law of the state of South Carolina where the act or omission occurred.

7 - Dr. Stephen Hoey, D.O. CD (Clinical Director), and K. Nolte (HSA) at FCI Williamsburg, South Carolina. Health workers involvement is extensive as detailed in this Memorandum Brief.

III - STANDARD OF LAW: LEGAL FRAMEWORK

8 - Fata will submit evidence that Defendants committed medical malpractice as defined under South Carolina Law where the alleged tort took place. Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009). In South Carolina a negligence claim is actionable where there is a legal duty and a violation of that duty, which causes injury. Vinson v. Hartley, 324 S.C. 389, 477 S.E. 2d 715, 720 (S.C. Ct. App. 1996). Proximate cause sufficient to establish medical malpractice has two components: causation in fact and foreseeability. Bramlette v. Charter-Medical-Columbia, 302 S.C. 68, 393 S.E.2d 914, 916 (S.C. 1990). The South Carolina Supreme Court has explained a claim for medical malpractice under South Carolina Law as follows:

" A physician commits malpractice by not exercising that degree of skill and learning that is ordinarily possessed and exercised by members of the profession in good standing acting in the same or similar circumstances. Durham v. Vinson, 360 S.C. 639, 650-51, 602 S.E.2d 760, 766 (2004). Additionally, medical malpractice lawsuits have specific requirements that must be satisfied in order for genuine factual issue to exist. Specifically, a plaintiff alleging medical malpractice must provide evidence showing (1) the generally recognized and accelerated practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances,

2

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------------

and (2) that the defendants departed from the recognized and generally accepted standards. Pederson v. Gould, 288 S.C. 141, 143-44, 341 S.E. 2d 633, 634 (1986); Cox v. Lund, 286 S.C. 410, 414, 344 S.E. 2d 116, 118 (1985). Also, the plaintiff must show that the defendants' departure from such generally recognized practices and procedure was the proximate cause of the plaintiff's alleged injuries and damages. Green Lilliewood, 272 S.C. 186, 193, 249 S.E. 2d 910, 913 (1978). The plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants. Pederson, 288 S.C. at 143, 341 S.E.2d at 634. David v. McLeod Regional Medical Center, 626 S.E. 2d 1, 3-4 (S.C. 2006); see also, e.g., Todd v. United States, 570 F.Supp. 670, 677 (D.S.C. 1983)(holding burden of proof is on plaintiff to show, in part, "[w]hat the recognized and generally accepted standards, practices and procedures are in the community which would be exercised by competent physicians in the same specialty under similar circumstances.").

9- Fata has complied with the Notice of Intent and expert affidavit requirements found in S.C. Code Ann. 15-79-125. Fata is filing the affidavit of Dr. Charles Howard, MD, as medical expert who has reviewed Fata's medical records and opined to the standard of care and generally recognized and accepted practices that would be followed by average, competent practitioners under the same or similar circumstances seen in Fata's case. Dr. Howard opined of the breach of the BOP's duty owed to Fata to provide him the standard of care as shown in his affidavit as the BOP departed from the recognized accepted standards. Delany v. United States, 260 F. Supp. 3d 505 (D.S.C., May 24, 2017). In particular, Dr. Howard opined that BOP's medical care "falls below the standard of medical practices/care for Fata's medical conditions which proximately caused him further infectious harm. See Dawkins v. Union Hosp. Dist., 408 S.C. 171, 758 S.E.2d 501, 504 (S.C. 2014)("medical professionals must at all times exercise ordinary and reasonable care to insure that no unnecessary harm [befalls] the patient".).

Dr. Howard is the Former Medical Director, Miami Federal Detention Center, Prison Medical Consultant. Dr. Howard has testified in several Federal Courts as an expert witness in Correctional Health Care. Cases have been for defendants as well as for the U.S. Government on separate occasions. For Dr. Howard's affidavit is sufficient to satisfy the threshold requirement of Section 15-36-100 of the South Carolina Code, and fits within the ambit of Section 15-36-100 (A)(3).

3

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

----------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA-AMENDED BRIEF-PART II
DATE: 10/02/2024 08:37:41 AM

CASE No. 2:24-cv-03830

FACTUAL ALLEGATIONS

FATA'S MEDICAL CONDITIONS (DOC. 5)

10 - Fata contracted Covid-19 in prison and tested positive on December 18, 2020. Fata was sick with deep cough, headaches and muscle pain.

11 - On March 27, 2021, Fata was diagnosed with long Covid.

12- On April 27, 2021, Fata developed left arm staph skin infection treated with antibiotics.

13 - On July 9, 2021, Fata developed yeast or fungal skin infection.

14 - On October 8, 2021, Fata developed prostatitis. Fata asked the Bureau medical provider for urology and hematology referrals in light of his painful prostatitis causing hematuria (blood in the urine), with persistent neutropenia. The provider told Fata that he will execute the referrals ASAP.

15 - On November 17, 2021, Health Services Administrator (HSA) Nolte assured Fata that she did verify that Fata was scheduled to see outside specialists.

16 - On November 30, 2021, Fata continued to experience leukopenia (low white blood cell count), hematuria (blood in the urine) and proteinuria (protein wasting in the urine), requiring "urgent" referral to urology.

17 - On December 17, 2021, Fata developed recurrent prostatitis-UTI.

18 - On January 28, 2022, Fata emailed Dr. Hoey of his hematological concerns after he obtained a second opinion from Dr. Jack Goldberg, MD, Board certified hematologist who recommended a complete immunodeficiency work-up and cyclic neutropenia panel in light of Fata's neutropenic recurrent infections. Which begs the question whether Dr. Hoey ordered a hematology consultation on that date.

19 - On February 11, 2022, Dr. Hoey (Clinical Director) assured Fata that he will see the urologist which begs the question whether Dr. Hoey made any initiative to expedite Fata's "urgent" urology consultation.

20 - On February 24, 2022, Fata's hematuria warranted the urology consultation to be rewritten as "URGENT" as specified by the bureau provider on February 24,2022.

21 - Fata received no medical care the entire months of March, April and May 2022.

22 - On April 26, 2022, Fata developed Staph Blepharitis treated with antibiotics.

23 - On May 25, 2022, Fata emailed his complaint to Dr. Hoey whether it is ethical for an "urgent" outside

4

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

consultation to be delayed more than six months till May 25, 2022, subjecting Fata for a serious risk of infectious harm as he continues to experience persistent hematuria and pelvic pain.

24 - On June 5, 2022, Fata emailed HSA Nolte asking to execute his "urgent" urology referral, and asked Dr. Hoey to take steps to expedite the administrative process by personally calling the urologist for guidance in some way as directed by the urologist and hematologist before Fata's appointment, but Dr. Hoey did not intervene to coordinate Fata's delayed care.

25 - On June 8, 2022, Fata had a "sick call" as to his urological symptoms and excruciating pelvic pain. Fata was diagnosed with recurrent prostatitis and Providencia UTI. Fata was found with persistent neutropenia and Immunoglobulin M deficiency. On June 9, 2022, Fata emailed Dr. Hoey asking if he could have a telephone conversation with the urologist about potential options until he is examined. There is no documentation whether Dr. Hoey-urologist phone conversation took place to guide Fata's care.

26 - Fata discovered for the first time, that the hematology consult was not requested until February 24, 2022. Had health officials referred Fata for hematology earlier before Fata had developed recurrent symptomatic UTI on June 8, 2022, Fata would have benefited from the hematologist's recommended NEUPOGEN therapy that would have altered Fata's medical care at the time. Accordingly, health officials referral delays have subjected Fata to further harm from prolonged pelvic pain and urological symptoms from relapsing prostatitis.

27 - On August 1, 2022, the urologist opined that the neutropenia is causative to Fata's history of recurrent infections, and the hematuria appeared to be related to the onset of Fata's recurrent prostatitis.

28 - On October 18, 2022, and after 11-month wait, the hematologist opined that Fata has chronic cyclic neutropenia. He noted twice: "it is reasonable to give NEUPOGEN during the infectious episodes" and again his hand-written BOP consult notes: "consider NEUPOGEN" as the neutropenia is causative to Fata's recurrent infections. But NEUPOGEN is not available at FCI Williamsburg, as neutropenic infections carry a mortality > 36%. https://www.accessdata.fda.gov/drugsatfda_docs/label/2015/103353s51841b1.pdf

29 - Dr. Hoey failed to respond to Fata's emails to have access to NEUPOGEN at FCI Williamsburg as a recurrent infectious episode is imminent. On November 14, 2022, Fata developed the inevitable recurrent Urinary Tract Infection (UTI), he was prescribed antibiotics only, absent NEUPOGEN treatment. Fata also developed recurrent Staph Blepharitis requiring antibiotic treatment on that date.

30 - On November 22, 2022, Dr. Hoey denied Fata NEUPOGEN treatment for non-medical reasons related to constraints in care level 2 and medical staffing shortage. Dr. Hoey told Fata: "Where do you think you are:

5

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

are you at Harvard ?" I am one doctor for 1500 inmates ... they do not give us help. We are short of one full time medical doctor and one full time nurse practitioner". Fata's claim of denial of "urgent" medical treatment with NEUPOGEN did not accrue until November 22, 2022, when Dr. Hoey denied NEUPOGEN and refused to submit NEUPOGEN's approval to Region or submit Region designation for care level 3 facility.

31 - From December 2022 to September 2023, Fata did not receive medical care in respect to his recurrent infections as Dr. Hoey failed to refer Fata to an infectious disease specialist as he had told him on November 22, 2022: "A complete Failure to mitigate Fata's infectious disease risk in prison".

32 - On September 28, 2023, Fata developed his ninth neutropenic recurrent infection manifested by his recurrent chronic prostatitis plus hematuria, absent NEUPOGEN therapy. Fata emailed his warden, case manager and Dr. Hoey for urgent timely access to NEUPOGEN at a care level 3 facility. The Bureau provider referred Fata to see the urologist for "urgent" consultation and treatment. Fata continued to experience intermittent hematuria, noctiuria and pelvic pain.

33 - The CT Scan of the abdomen and pelvis on November 14, 2023, showed an enlarged prostate with median lobe hypertrophy, absent clear source of infections. Thus, pointing to Fata's chronic neutropenia and immunodeficiency as the proximate cause of his recurrent infections.

34 - In his encounter on November 21, 2023, Dr. Dominici failed to address Fata's urological symptoms and never discussed the CT Scan findings with Fata, and falsely estimated Fata's neutropenia by considering the white blood count instead of the neutrophil count.

35 - In February 2024, Fata was told that there is backlog to refer inmates for outside specialists for treatment due to staffing shortage. Fata wrote his warden and AHSA to expedite the process as he continues to have lower urological symptoms, but Fata never received an answer related to his injury.

36 - On March 8, 2024, Fata saw Dr. Dominici in the waiting room of health services rather than the exam room, to address Fata's urological symptoms. Dr. Dominici never requested urinalysis or urine culture or even possible urinary Catheter. On March 11, 2024, Fata asked Dr. Dominici to call the urologist for some type of guidance as he could treat Fata before Fata's upcoming appointment with the urologist.

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: FTCA-AMENDED BRIEF-PART III
DATE: 10/02/2024 06:45:15 PM

CASE No. 2:24-cv-03830

37 - After a six month wait on an "urgent" urology consult, Fata saw the urologist on March 18, 2024, who recommended a cystoscopy and possible TURP. He also told Fata that cystoscopy should be performed soon, but acknowledged that the BOP may take "months" to get it scheduled. He noted: "I believe his hematuria is likely due to his history of frequent UTIs and acute on chronic prostatitis due to his history of neutropenia". And Fata's neutropenia causative of those infections is exactly what the BOP failed to treat. Which begs the question whether the BOP did exercise ordinary diligence under the circumstances to timely coordinate Fata's urological care in light of his immunocompromised status from cyclic neutropenia plus IgM deficiency that place Fata at serious risk of infectious harm.

38 - On August 16, 2024, Fata reported to medical for right sided flank pain and hematuria as he continues to urinate five times at night. Mrs. Harrell, PA, told Fata that his cystoscopy has been postponed to a later date. Which begs the question whether defendant's care deviated from the standard care to wait "one year" to have a cystoscopy as requested upon Fata's "urgent" urology consult for prostatitis in September 2023.

39 - On May 29, 2024, Fata developed recurrent Staph Blepharitis treated with antibiotics.

40 - On August 20, 2024, FCI Williamsburg has newly diagnosed at least 6 inmates with Covid-19. The facility failed to implement the standard CDC Covid precautions . On that date, Mr. Derrick Blash in Fata's housing unit, cell 111, was allowed to walk around the general inmate population without face masks which exposed Fata being an at-risk vulnerable host (chronically immunocompromised) to Covid-19.

41 - Fata's housing unit was not provided with face masks as outlined in Fata's requests to health services: Fata's emails to health services and to his warden were not answered and fell on deaf ears.

42 - On August 22, 2024, the inevitable occurred: Fata became sick with sore throat, cough, runny nose, muscle aches, headaches, and weakness with chills. Fata was asked to report to sick call.

43 - On August 23, 2024, Fata reported to sick call with worsening of the above symptoms. He was not tested for Covid-19 and the medical provider refused to test for Covid and told him he has to go to the hospital in order to receive Covid testing which is simply untrue. Fata has verified with Mrs. Mims, RN who assured Fata that Covid testing kitts were available at FCI Williamsburg health services. The BOP provider opted to treat symptoms only and allow the infection take its course despite the presence of Covid

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------------------------

in his housing unit and his risk factors to Covid, and his Covid symptoms, but Fata was deprived from

receiving the standard Paxlovid treatment that is life-saving had he tested positive for Covid. As a result,

Fata suffered prolonged recovery from the virus with persistent symptoms that required Broncho-dilator

inhaler treatment added on 9-5-2024 . The provider released Fata to the general prisoner population

without Covid testing which is "cruel" as it could spread the virus and cause further exposure to vulnerable

prisoners.

44 - Fata was denied the standard CDC Covid precautions (face masks) and Covid testing and treatment in

spite of the presence of Covid in his housing unit and his risk factors to develop complications

(hospitalization) from Covid, and his Covid symptoms. Such Covid testing and treatment is widely available

in the community as Dr. Howard noted in his affidavit: (DOC. 6)

> " Mr. Fata did not have recurrent infections prior to incarceration but began having issues
> after contracting Covid while incarcerated. Although he most likely would have had Covid had
> he not been incarcerated, he would have been able to obtain appropriate and timely care in
> the community".

45 - Fata has asked Mrs. Allen (Acting Health Services Administrator) to explain her department's

partiality to test six inmates for Covid but deny Fata for Covid testing factoring for the same symptoms

and risk factors: Fata's email to the AHSA is alarming as to Mrs. Allen's statement of her department's

numerous malpractice lawsuits in the district of South Carolina filed over the past 5 years, she answered:

"I don't care".

46 - As a result of the BOP's false diagnosis and treatment of Fata's respiratory infection, Fata suffered

prolonged viral bronchitis with worsening symptoms lasting more than 4 weeks that failed bronchodilator

breathing treatment initiated on 9-5-2024, more consistent with Covid bronchitis than common cold.

On 9-5-2024, Mrs. Harrell, PA, told Fata that based on Dr. Hoey's, CD, instructions, FCI Williamsburg is

no longer testing for Covid as of 8-21-2024, and on 9-19-2024, she and Dr. Dominici conceded to treat

Fata's persistent respiratory symptoms with steroids for "untested Covid pharyngitis-bronchitis". Fata

was also diagnosed with right ear infection (otitis externa) treated with antibiotic ear drops that was

missed on 9-5-2024.

V- MEDICAL EXPERT AFFIDAVIT AS OF JUNE 5, 2024: (DOC. 6)

47 - Fata is filing the affidavit of Dr. Charles Howard, MD, MMM, former Medical Director at Miami Federal

Detention Center Prison Medical Consultant, who has reviewed Fata's medical records and opined to the

standard of care and its breach in Fata's medical care. In particular, the BOP's failure to timely refer Fata

--------------------------------------------------------------------------------

for "urgent" outside specialty consultations and denying him the standard urgent NEUPOGEN treatment.

Dr. Howard has testified in several Federal Courts as an expert witness in Correctional Health Care.

Cases have been for defendants as well as for the U.S. Government on separate occasions.

48 - The BOP's medical staff apparently did nothing at all to determine the cause of delay in Fata's "urgent" care, much less to remedy it. During those long-intervening months when Fata was not receiving the medical care he needed, he has already developed painful recurrent infections that recurred on November 14, 2022 and September 28, 2023 with progressive urological symptoms of recurrent active prostatitis, absent NEUPOGEN therapy, and absent referral to infectious disease specialist, that can alter Fata's medical care in light of his "high risk immunocompromised status from chronic cyclic neutropenia plus IgM deficiency", that can result in irreparable infectious harm. Fata's communications with his warden and AHSA in February 2024, showed that the BOP failed again to timely refer him for "urgent" urology consult that took more than 6 months, while Fata continued to experience hematuria and pelvic pain. Thus, as Dr. Howard's affidavit noted that the BOP acted in violation of the standard of care that "urgent medical consultations must take place within 30 days because of the acuity of the medical care provided". Instead, Fata's waiting "one year" to have a cystoscopy as requested upon Fata's "urgent" urology consult in September 2023 is beyond reason.

49 - On November 22, 2022, Dr. Hoey, D.O. refused to submit approval of NEUPOGEN to Region to obtain the medication and have it available at FCI Williamsburg, after Fata developed a new recurrent UTI/Prostatitis on November 14, 2022 after he saw the hematologist. Dr. Hoey denied Fata access to NEUPOGEN due to non-medical reasons related to constraints in care level 2 and medical staffing shortage. And Dr. Hoey failed to request Region's approval to transfer Fata to care level 3 setting to provide Fata timely access to NEUPOGEN, and to refer Fata to an infectious disease specialist. In light of Fata's immunocompromised status, the question becomes not "IF" but "WHEN" would the next infection relapse. For the nature of FCI Williamsburg clinical director's acts knowing that further injury will result absent NEUPOGEN treatment of Fata's chronic cyclic neutropenia cannot be grounded in or be based on any BOP policy, because the BOP does not have any policy that limits or restricts the scope of use of NEUPOGEN in care level 2 facilities as Dr. Hoey claimed, nor does it restrict NEUPOGEN's indication prescribed for Fata by his treating hematologist as the BOP owes Fata a legal duty under 18 U.S.C. 4042(a)(2) to provide him the standard treatment that is widely available in the community to a lay person.

In fact, On September 28, 2023, Fata developed inevitable recurrent active prostatitis causing him further

9

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------------------

infectious harm with hematuria and pelvic pain, absent NEUPOGEN therapy. Thus, the BOP failed to exercise ordinary diligence under the circumstances when it moved with alacrity to approve Fata's requested "urgent" specialty consultations, but did nothing further to ensure that he timely received the NEUPOGEN treatment he needed "urgently" to treat his neutropenic infections, and timely received "urgent" urological care requiring cystoscopy. To this date, Fata has not undergone cystoscopy with more than 1 year wait from September 2023, nor seen an infectious disease specialist since November 22, 2022.

50 - To end, Fata is filing his affidavit addressing the substandard medical care he received in the BOP and the breach of recognized standard medical care available in the community (DOC. 7) with proximate causation.

51 - WHEREFORE, Plaintiff demands judgment against the Defendant UNITED STATES, and requests the following relief:

(a) Bench trial with medical expert testimony

(b) Non-economic actual and compensatory damages ($500,000.00) that may be awarded under South Carolina law, 15-32-220, plus such other relief this Court deems appropriate

52 - Signed under penalty of perjury. 28 U.S.C 1746

Respectfully Submitted,

Farid Fata                    October 3, 2024

Farid Fata
#48860-039
FCI Williamsburg
P.O. Box 340
Salters, SC 29590